The next case is number 2012-1042, Commier USA v. CISCO SYSTEMS. Mr. Lee. Thank you, Your Honor. Clear the courtroom. I hope it doesn't continue. May it please the Court, my name is Bill Lee, and together with my colleagues Felicia Ellsworth and Hank Gutman, I represent CISCO. While there have been a host of issues addressed on appeal, I'd like to focus my argument on just three today. First, the second jury was erroneously instructed that it could find inducement based upon a negligence standard. That is clearly wrong after global tech. That error was compounded by the district court's refusal to allow CISCO, in the second trial, to present evidence that it had a good faith belief on invalidity. That error alone would require a new trial, and we suggest, under gasoline products, a new trial on validity, direct infringement, indirect infringement, and damages. The second issue I'll address arises from the claims and disclosure of the patent. As the Court knows, the claims and the specification are very specific, and as a result, the claims are quite narrow. That has a host of consequences. I'll focus on just one, the running step, the second step of the asserted claims. Then lastly, if time permits, I'd like to go to damages, which is an independent basis for a remand. The royalty base that was used here was the entire market value of the low to LWAP products. The entire market value wasn't satisfied, and in any event, the licenses that were used were licenses the expert hadn't even read and were so different from the hypothetical negotiation as to be legally insufficient on the rescue net. So if I could go to— Mr. Lee, was there evidence presented as to what portion of the system was based on the value covered by the patents? The answer is no, Your Honor, and in fact, if you're on the site page, it's 6247 and 6248 of the appendix. The expert for Comey conceded that he had not apportioned, and while this is my last issue, let me finish the thought. What happened was Comey opened on the proposition that the entire LWAP were infringing products, even though the asserted claims are method claims, but even as to those products, there are several functionalities not disputed that have nothing to do with the asserted claims. There are functionalities like Wi-Fi compliance and security that as a matter of undisputed evidence have nothing to do with the asserted claims. Appreciating that, my question was how was that presented to the jury? It was presented, Your Honor, to go back where I was starting. It was presented as the LWAPs in their entirety being infringing products, even though there's a method claim. It was presented to the jury as those products constituting the proper royalty base, but even though those products have multiple functionalities, some clearly having nothing to do with the claims, several having to do with the split architecture, but still having nothing to do with the claims. It was conceded by the expert for Comey that there was no apportionment, and without that apportionment, that entire market value rule analysis was legally insufficient. In fact, the briefing, Your Honor, to the court is we didn't invoke the entire market value rule. Well, the rule is not something that you decide to invoke or you don't invoke. It's a rule that applies, and when you open to the jury and say these products infringe, these products have a revenue base of $1.2 billion. You should award a 5% royalty on $1.2 billion. That is the entire market value rule, and then you have to satisfy the requirement that you demonstrate that the claimed features drive demand. I think one of the places where the problem is captured is at page 61 of Comey's brief, where they quote some testimony from one of our witnesses suggesting or arguing that there's evidence that the claimed invention drove demand. When the court looks at that portion of the record, what you'll see is it's nothing more than the witness acknowledging what you would expect. There are very successful products, and the witness is saying the features of those products drove demand for those products. Of course that's true. The question that's not answered in those questions and the question that the expert concedes he didn't answer is this. Do the claimed features of the patent drive demand? And there is no evidence of that, and there's no evidence of apportionment, and that would require a new trial on damages. I feel like Justice Breyer now, because I think a few weeks ago he cautioned your colleague, Seth Waxman, during an argument, that would you please take a breath so that I have an opportunity to interrupt you. So here I go. On the first point of your roadmap, let's assume for the sake of argument that we agree with your concerns about the jury instruction. So now we're talking about the scope of a new trial, because let's assume there's a problem with the inducement instructions. And let's assume also for purposes of getting through this that we also or I also think that I can understand therefore why you should have been able to introduce evidence with regard to your various invalidity contentions in connection with your good faith belief in the inducement context. How, however, if we think all of that, does that necessarily allow you to also get a new trial on your separate and distinct invalidity contentions, which I understand were limited to enablement and written description? Did you understand my question? I do, Your Honor. And I think the answer is this. I think that as a matter of the analysis, you could parse the issues just as you have. I think the guiding light here is gasoline products. And it basically says if the issues, and I'm paraphrasing now, if the issues are sufficiently related or overlapping, the presumption, the strong presumption is they should be tried together. And so why wasn't that argument, though, made the first time around before the district court? I mean, why even give the district court the opportunity to find that that argument was waived? Your Honor, I don't think it was waived. But if I go through the chronology. Well, it certainly wasn't raised. What happened, Your Honor, is there was the district court invited the motion for the new trial. The motion for the new trial was made and Cisco. And it said partial. Well, what happened was Cisco opposed the motion for the new trial, period. When it came out that Comey was seeking a partial retrial, Cisco said, no, you can't do that. What do you mean when it came out? Didn't their motion for the new trial say that it was only on certain aspects? Only on issues on which they lost. Right. So when you say it came out, it came out then when the motion was filed and before you filed your response, right? Yes, Your Honor. But the issue, there are two issues here. One is we're talking about a waiver of a constitutional right to have the issues tried together, which really means that the evidence for the record has to indicate strongly that there's been a conscious waiver of that result. When it became clear that the court was considering a partial trial, partial retrial, Cisco made clear that it objected to that partial retrial and thought a partial retrial would be inappropriate under gasoline products. I think the important thing, Your Honor, is before the second trial occurred, Cisco had made that claim. Okay. So assuming that there's no waiver then, then I can at least intellectually see a distinction between a good faith belief in invalidity and the actual question of invalidity. So why is it that they're so intertwined that they can't be tried separately? Your Honor, I think the answer is this, and I think two things. I think that you're right, that there is an analytical difference between the two. The former is more the subjective state of mind of a party or a litigant. The second is more objective. Is it valid or is it invalid? I would suggest this, and this is what I think gasoline products implies. If the invalidity defense is very strong, that objective fact tends to support the subjective claim that you had a good faith belief in invalidity. But we're assuming that you get to put on that evidence about the strength or lack thereof of your validity defenses in connection with the defense on good faith belief. The only distinction that I think Judge O'Malley and I are getting to is why you should, independent from raising all of that in connection with the defense, also be able to get a retrial on the precise question of validity. Your Honor, I may have been unclear. I understand the difference for sure, and our briefing is focused on Judge O'Malley's first point, which is our good faith belief that the patent's invalid as negating the requisite intent for inducement. What we're arguing is the merits of invalidity are intertwined sufficiently under gasoline products that they should be retried together. In fact, it's correct that the defenses you would use to the good faith belief are not just the validity defenses that you want to go back to the jury. It includes obviousness and anticipation and others, right? Yes, for sure, Your Honor. Speaking of intertwining, I'm having a hard time understanding how your first issue is one issue. I mean, because your whole issue about gasoline products is whether you should have had a partial second trial at all, and the other two issues about the way the second trial was handled are from the second trial. So we'd either have to say regardless of what happened in the second trial, you should have had one trial. I mean, that's the only way you get to the one trial issue, right? I'm not sure, Your Honor, and I think this is the place where I would recharacterize the distinction. Gasoline products applies to both issues. Gasoline products applies to the question of whether there should have been a partial retrial in the first instance. I'm not arguing that this morning. We've addressed that in our briefs. The question is that if I take both issues that I've addressed with you this morning, damages and the inducement instruction, and either or collectively they require a new trial. We submit that collectively they require a new trial. A new partial trial. Well, that's the problem. If we're only looking at the second trial and you've got arguments that the second trial was infected by error, then you go back and you try that case again, right? That's a place where I think actually we would respectfully disagree. Let's say the first trial had never occurred at all. You'd probably like that it would have never occurred. In some respects, yes. In some respects, no. But certainly in some respects, for sure, yes. If you were just confronted with a trial where there was an erroneous inducement instruction and an erroneous damages instruction, the question is how to deal with that. And either or both. But let's take them collectively require a retrial on those issues. Gasoline products then says, okay, for the other issues, the issues that were maybe not decided in error but are sufficiently intertwined, should there be a retrial on everything? This is different, Your Honor, than when a district court adjudicates validity and infringement and damages, and maybe the damages is only an error and it goes back just down in damages. They're sufficiently separable under gasoline products. What we're suggesting is they're not sufficiently separable. Now, I don't disagree for a second. I'm a bit of a civil procedure nerd, and I think you're merging these things. If we agree with you as to the gasoline products issue, I think we never even get to the second trial, right? Yeah. Your Honor, if you agree with us as to the gasoline products issue, you might not get to the second trial, but I actually think you focus on the gasoline products issue for that second trial. Gasoline products is going to apply to a retrial for both, the first and the second. You're right that if you focus on gasoline products for the first, and there never should have been a retrial, and all of our other defenses that were raised on infringement, the court rejects all of our other defenses, that in that circumstance, you might get yourself to a place where the first verdict stands. But I think gasoline products applies independently to what you're going to remand on the second trial. Now, for sure, to be clear from our perspective and the arguments we made for you, the most important thing to have a retrial on are induced infringement, damages, and the ability to demonstrate a good faith belief that the patents were invalid and not infringed in order to demonstrate that we didn't have the requisite intent. I think the gasoline products question becomes, independently of what happened in the first trial, what else is there that should be retried? Under gasoline products, do you concede that direct infringement is not so intertwined with the issues of validity and inducement that that would not have to be retried? Your Honor, I think there's a progression, but I think they're intertwined for this reason. The defenses, and I know I'm getting close to reusing my rebuttal time, but I'll do it as quick as I can. Defenses taking claim one as an example on the dividing and the running step, or the running step specifically, that are going to apply both to direct and indirect infringement, because we do need the acts of direct infringement by the third party. Our good faith belief in whether they are, in fact, infringing acts is also relevant to the retrial. We'll save you time, but when you say this is what really has sort of seems to come through your briefs when you say the defense and the breadth. So the reason I gather for your concern about not being able to relitigate validity or enablement is because of the opportunity to discuss whether the claim should be limited to the Bluetooth or at least more narrowly than that which would be required to cover the entire Wi-Fi usage of Cisco. And therefore, it would flow over into what looks to me like a gap in the evidence of the defense with respect to what the royalty base should be. Your Honor, our point is it all comes together. The narrowness of the claims, the specification, have multiple implications. They have infringement implications. They have validity implications, particularly under Section 112. And that's the reason that I'm making the argument under gasoline products. I understand fully the point that Judge Prost and Judge O'Malley have raised about issues that might not be directly related to the issues on remand. The question is, are they sufficiently related under gasoline products that everything should be retried together? I think the issue that you've raised, which is the narrowness of the specification, the specificity of the claims, is probably one of the best indications that how closely this is all wrapped up together. And the implications of that clearly will affect whether we had the requisite intent, willful blindness, or the actual intent to induce. We induce direct infringement as a matter of fact, and how the damages should be determined. One more question. Can I take from your quite lengthy list of two points, the omission of the enablement and written description, validity content, and to suggest that those are sort of at the bottom of the list in terms of what you view as the strength of your case? Would that be a fair assessment? Your Honor, I think the fair assessment would be this. I think that if I do my own best to take the Court's collective jurisprudence, and I look at a narrow specification and a claim that requires specifically dividing and running, and a claim interpretation comeo doesn't dispute that the dividing step requires a separate instance of the protocol at both the base station and the access point, it has one of really two consequences, we would suggest. If it's taken out of its face, we don't infringe. And in a sentence I can say to you, if the Court considers the arguments Kogelman made to you, they have confused and confused the jury into confusing information and data that protocols work on with protocols. However, if you're not going to read it as narrowly as we do, and it's going to apply broadly to Wi-Fi networks that are not connection oriented, that are designed to have mobility, then there are Section 112 issues with it. And when you have a circumstance, Your Honor, where inventors knew of Wi-Fi, Wi-Fi was out there, Bluetooth was out there, they specifically identified Bluetooth, they specifically identified connection oriented protocols. And then they have that long table that specifically describes how you would divide the Bluetooth protocol. If it's as broad as they say, there would be 112 problems. I think if I, when I total up the three issues and gave you the long-winded second one, the answer is that I think that our judgment is taking the Court's jurisprudence on claim interpretation and how you deal with the consequences, non-infringement is probably the strongest of the three. Okay. Thank you, Mr. Lee. Mr. Werbner. May it please the Court. My name is Mark Werbner and I represent Comil USA. The jury in this case was properly instructed. The instruction accorded with the en banc decision in DSU. Nothing in Global Tech states otherwise. The contention by Cisco relying on footnote 10 of Global Tech that says the knower should know should not be in a jury instruction is a mischaracterization of footnote 10. Footnote 10 by the Supreme Court says that the standard we set today was not properly instructed. And the sentence that that comes from makes it clear to me that that's referring to the willful blindness standard. At best, it's ambiguous. There was nothing in there. The Supreme Court did not address the quality of the jury. I'm confused. So how can you say, okay, the Supreme Court says the test is you have to have at least willful blindness or actual knowledge. How can you say that leaves alive a new or should have known standard? Your Honor, because the Supreme Court was addressing the actual knowledge of the patent or willful blindness of the patent because in that case the infringer did not know of the patent. The Supreme Court was not addressing the knower should know as it appears in our jury instruction, which of course with DSU. And in our instruction, it meets the standard. Well, don't you think that in Global Tech what the court was talking about was knowledge or willful blindness of inducing a wrongful act, period? I think that… It would include knowledge of the patent, but it would also include knowledge that you were inducing infringement of a valid patent. Well, clearly the holding is that you have to have actual knowledge of the patent or willful blindness of the patent. There was nothing new in the Supreme Court saying that you had to show that there were knowing acts that you knew would cause infringement. That was already said in DSU en banc. I'm really unclear. So you're saying that the standard of new or should have known is the correct one that would apply, but that's why there's not a problem with the jury instructions? No. The correct standard? No, Your Honor. Let me clarify. I'm saying that clearly under DSU and Global Tech, to prove induced infringement requires that you have actual knowledge of the patent or willful blindness, plus you have specific intent and you know that the acts you are inducing will lead to infringement. What I'm saying is our jury instruction did that, and DSU and Global Tech go hand in hand. Your jury instruction did that because you think it was correct to instruct that the standard is new or should have known? I think taking the jury instructions as a whole, it begins by saying that you must find that there was knowing, aiding, and abetting, that it must be intentional. The sentence taken in isolation with know or should know begins with the word furthermore, which means in addition, and then that has the know or should know, which as recently as a few weeks ago was an instruction in E+, which was affirmed by this court. Well, the instruction has new or should have known in two places, right? The furthermore sentence and then later on, I'm looking at the transcript, page 99. If you find a third party directly infringed and that Cisco knew or should have known that its actions would induce direct infringement. So it's two places, right? Yes, and then the third one below that has more clearly the knowing that it would cause infringement. Your whole argument depends on this division between what you have to know about the patent and what you have to know about whether or not the activities you're encouraging would read on that patent. Is that right? I do believe there are two separate and distinct requirements. Well, how do you deal with the language in Global Tech where they're citing arrow two and it says that under 271C, the violator must know that the combination for which his component was especially designed was both patented and infringing. And then they say that same conclusion compels the same knowledge for liability under 271B. I accept that standard. I acknowledge that standard. It's present in Global Tech. It's present in DSU en banc. I'm saying taking the Comey jury instruction as a whole, the very first sentence says that you must find that Cisco knowingly aided and abetted in the infringement. So is your argument that in the context, the jury would have heard several of these things and would have decided one was the right and the other was wrong? Are you saying if you acknowledge that the standard is an incorrect one and it appears several times in the jury instructions, then the fact that there was a correct standard in other parts of the jury instructions makes them okay? I'm trying to understand your theory here. I'm not saying that. I'm not saying that you can put out a jury instruction that has a conflict in a standard and that's okay and the jury figures out the right one. I'm not saying that. What I'm saying is taking this jury instruction as a whole and looking at what the judge said specifically as that instruction begins and knowing that the entire language comes from DSU. That jury instruction comes from DSU in the en banc decision. No court, the Supreme Court, no court, this court has not overruled that. Those two cases go hand in hand, and it's because where you do have actual knowledge of the patent, which was something the jury accepted here, and the jury was told you have to find – this was knowing, aiding, and abetting. Those words make clear. The know and should know follows in addition. Can I move you on a little? Yes. I understand your point here. In a similar vein, leaving aside the instruction part of it, how could DISCO have been precluded from raising the defenses given what we all know is required in terms of inducement to not raise the questions of validity to demonstrate subjective good faith belief? I think there are strong and compelling reasons why it was proper to exclude that evidence. Number one, they were permitted to show their good faith that they didn't infringe. That's a matchup between you're being accused of inducing infringement, and you're saying even if you're wrong, you thought you weren't infringing. Your Honor, the reason that – Do you think the case law draws a distinction, global tech draws a distinction when it says that you knew that the acts constituted infringement, that that only applies to the infringement piece of it and not to the validity piece of it? I do. I don't think the opinion addressed – You really? Yes, Your Honor. How can you infringe a patent if the patent is not valid? How can there be infringement of an invalid patent? Well, there's a statutory presumption that patents that have been issued are valid, and they can only be overcome by clear and convincing evidence that they're not. And I don't think there's any case that says – this court hasn't said or any higher court has said that good faith belief in invalidity is a proper defense to inducement. Now, this court could say that. Has it ever said the opposite? It hasn't said anything that would indicate that that's not correct, right? No, I think this is an issue of first impression. We've got a split among the district courts, and I will concede that the district courts that support you, they're thoughtful and they've carefully analyzed the issue. But you would have to concede to me, would you not, that the vast majority of the district courts disagree with your position? I count it up as 2-2 or 2-3. So it may be 3-2 going their way at the district court level. I know the E-plus case, which was decided just two weeks ago or very recently, is a very well-reasoned opinion at the Eastern District of Virginia that deals with that. So you think you can have a finding of inducement. You say if you think there's a good – you have a point of infringement, then that gets you out of inducement. But if you think, and you have a really, really strong case that the patent is absolutely positively invalid, that that would similarly not be a defense? Yes, Judge Prost, and here's why I think policy-wise that should be the case, because an infringer will know that they've become the infringer because if they're not, and on a valid patent, because if it was invalid, this won't issue come up. So if a person who's accused of infringement says, well, I think I'll be infringing, but I believe that it's invalid, they shouldn't be allowed to proceed to go forward and sell the product because they're facing a statutory presumption that that patent is valid. They can go to the PTO and ask for a re-exam, which they did and lost. They can go to court and ask for a declaratory judgment that that patent is invalid, but they shouldn't, like their five-page proffer in the record here, based on basically having litigation people come and testify that we think that we thought that it was – But validity is a defense to infringement. I mean, the same argument can be made that you shouldn't be able to infringe and come up with a defense. You don't have to file a counterclaim. You don't have to file a DJ. You can just use validity as a defense in any infringement case. They had the opportunity to do that, but it's a very different thing to have an opportunity by clear and convincing evidence to establish that than to say, here's a person who says that I didn't think that it infringed. I mean, I didn't think it was valid. They shouldn't do that in the face of a statutory presumption that it's valid. So then maybe to cut through all of this, what was the status of the first jury verdict on validity? Is that dead? Is that a nonentity or is this something – obviously the trial court in not permitting retrial of validity felt that there was some continuing substance to that issue that would reach us on appeal. I think that the trial courts felt, because they didn't raise anticipation or obviousness that they had a full and fair opportunity to try the validity and lost that – My question was, was the trial court relying on that initial jury verdict? And are we expected to give any deference to that initial jury verdict? Well, I think the grounds for excluding the good faith belief was not completely based on, and maybe not at all, based on the fact that the jury had already said that the patent's valid or not invalid. It was based on the view that that is not a proper defense to an infringement. What's interesting to me is that it was a defense that he allowed in the first trial, right? As long as validity was being tried, he allowed that good faith argument, right? But not – So how does it become a defense – not a defense in the second trial? Because to have a witness stand up and say, I read the patent and I didn't think that it was valid, is much different than coming forward with a witness to say the written description isn't adequate because the person's skilled in the art. It's not enabled because – But doesn't that walk you right into the gasoline products problem? I don't think so at all, Your Honor. I think that there are many cases, including this court, where it's made very clear that infringement is separate and distinct from validity. And that's the two poles that need to be measured. And the validity was left in trial number one. And in trial number two, it was separate and distinct to try infringement and damages. And there's numerous cases that use the word separate and distinct in that context, which matches the words in Rule 54 about a partial new trial, which that rule expressly anticipates. Let me go back to what you mentioned before, the E-plus case you said out of Virginia? It was – the district court was Eastern District of Virginia, and then this court affirmed – And what is it that we said that you think controls anything here? Well, I was directing – when Your Honor asked about the district court opinions, that was one that I liked and that I thought would be helpful to the court. What this court did was say we've reviewed the entire record, and we find that there was substantial evidence to support the inducement of infringement finding. And when you look back at the district court, the instruction that was used there was identical to the one here. That is not mentioned in this court's opinion. But obviously, it was all over the district court opinion, and the induced infringement claim was specifically upheld on substantial evidence in the opinion. But that case had nothing to do with this question of whether or not a good state's belief in validity is a valid defense. I misspoke when I referenced that case. The other cases – I don't have the names, but there are two or three on our side and two or three on their side. I think the court has before it an opportunity to really address that question, and it should be driven by a policy decision as to the fact of the statutory presumption, which makes it quite different from infringement. And so I think that statutory presumption is where Congress struck the balance. And I don't think it's unfair to a defendant who can defend inducement not only by saying there wasn't direct infringement, but I didn't have a state of mind, but also I didn't think that I was infringing. I think they have all those defenses. They should not be allowed to say, well, I thought that this patent, which is presumed valid, and that I would have to show by clear and convincing evidence – That's exactly the right they get in the willfulness inquiry, right? And it has the proper place there. It should be in that place. But this is not – this is an actual damage. There should be a distinction between a willfulness and there are differences there. But they're both intent-based questions, right? In both instances, it is do you have a wrongful improper intent, and how do you distinguish? I mean, even if you were correct that maybe we should draw this distinction, shouldn't we have drawn that distinction in willfulness? Well, I don't think so. I think willfulness, it's the right way the way it is. The reason I think in inducement, we have to prove and have substantial evidence of their wrongful intent, their specific intent. But they should not – it's not inconsistent with that requirement of specific intent to say that they can't get up and say they thought a patent was invalid when the United States law says it's presumed valid. And they can go to the PTO to have it invalidated, which is what Cisco attempted to do here and failed. And that re-confirmation certificate – Can I ask – let's assume for the sake of argument that we've gotten past that point and we're on sort of the final point of this step, which is the Seventh Amendment argument and whether or not if there's a new trial, it should include the aspects of validity and infringement in the earlier trial as well. Because obviously at some level, all of this is pretty much intertwined, is it not? I think that it is not intertwined. I think there are specific case authorities that say validity is separate and distinct from infringement. I think this court has said that. I think that this court has remanded cases, and we cited them in the brief, where the remand was of only one of those and the other was upheld. So I do not think they are intertwined at all. Validity – That presupposes that we agree with you that validity – that a good faith belief in invalidity is not a defense, right? I mean – no, I was assuming the opposite. Maybe we should clarify that. I'm not assuming we're past that point, and we think that there ought to be a new trial on inducement and that the defenses of a good faith belief in non-invalid or validity – I understand, and I will answer it with that assumption. I do not think that allowing the good faith belief of validity now makes what was separate and distinct intertwined because the good faith belief in validity is, if it's permitted, is a defense on intent to infringement. It sounds – that's why I think the judge felt it was very confusing after the actual finding of validity to go to the mental state. But because it has the component or the word invalidity doesn't mean that it's pretty much an invalidity. It's a state of mind defense, really no – I mean that's how I would see why it's not intertwined. I was intrigued that you didn't even mention waiver in your brief. Are you deciding that that's not an argument or a position that you can support? Oh, no, I like that argument a lot. Well, it would have been nice if you made it, right? Well, I'll make it now, Your Honor. So we have a waiver of a waiver? No, I don't want to do that. I mean clearly as one of the members of the court asked that in the motion for new trial made it very clear we were seeking a partial new trial. The response does not address that. It comes up after the judge rules on a partial new trial when in a motion for reconsideration an allegation was made that that's a waiver and the trial judge found that that was a waiver. What's our standard of review with respect to a trial judge determination of waiver? I wouldn't be afraid of a de novo review. I'm not certain that I know without researching that standard. Without prolonging, at this court the trial judge refused to certify the issues for appeal at that stage. It seems to me it's quite difficult to say that having made that request and having it denied that the argument has been waived. Well, the waiver depends on the fact that the trial judge was deprived of that argument before the ruling was made. And I think it's sound jurisprudence that for a trial judge to make a decision, the arguments have to be raised. And the courts frequently say if you didn't raise it, it's too late to raise it later. How much time occurred between the order for a new trial and the start of a new trial? The order of the new trial I think was in late 2010 and the new trial began in April or May of 2011. So I guess 8, 9, 10 months. 8, 9, 10 months. Yes, Your Honor. So what prejudice to you would arise from the fact that they didn't raise this constitutional issue until after the court's order for a new trial? Well, I've never felt that the – I don't believe that there's a constitutional problem. And while I think it was waived, maybe that's why I haven't devoted more time to it is because that's a component of our position, but it's not the major part of our position. May I spend just a minute or two on – Can I just ask you one quick question? Oh, sure. Just – I mean I wasn't joking about waiver of a waiver. I mean you didn't raise that at all in your briefs before us in terms of a response to the other side's arguments in this regard, did you? Oh, I thought you meant waived it by not addressing it this morning. I apologize for misunderstanding. Yeah, was that a – I believe it is. I believe it is. And what I – I thought you were saying it's not – you hadn't raised it at all. No, and I hope Your Honor knows that what I heard was waiving it by not raising it this morning. All right. Now we're out of time. What points do you want to raise with us now? I wanted to maybe have a minute on damages, which Mr. Lee addressed, which I have not yet. One minute. Thank you, Your Honor. This case damage is distinctly different from the problems that justifiably existed in cases like Unilock and Lucent and the recent laser dynamic. There was apportionment in this case. There was a sound economic analysis done. All of the Georgia-Pacific factors were discussed. There was linkage that occurred between the licenses. It was proper for the jury to make the decisions about that. And whether the fair market, you know, entire market value rule applies or doesn't, we contend that it didn't because the smallest salable unit was used. But even if it did, this is an excellent case to demonstrate that it was complied with because the patented feature was at the core of these products. The minute you turned them on, the patented feature was running it. It was a unified whole. And the testimony was clear. That patented feature drove the demand. It opened up a new market. And that this new feature along with old features, these new products with this at the core was going up 100% a year in sales while the old ones without that feature were plummeting to 25% a year decreases. So in conclusion, Your Honor, and I thank the court for your indulgence, this is a solid, sound case where the damage award is not outrageously high, which is one of the standards that has been written about by this court, but complies with the kind of things and avoids the problems that you had in the three cases I mentioned. Thank you. Thank you, Your Honor. Enlarge Mr. Lee's time by the amount we've run over. How much? Eight minutes, 41 seconds. I'll be brief. I'll be brief and not use it all. Let me talk about the waiver issue. I may be wrong, but I don't think that Comeo's brief raises the issue of the waiver. I don't think it does either. And there is a waiver. If there are issues below and they're not brought up to you. But the problem is we are reviewing a judgment below, and the judgment below was premised entirely on waiver. So if they're arguing that that judgment was valid, how can we – it's one thing to sort of ignore a general argument, but to ignore the judge's basis for their judgment? Well, Your Honor, I would say two things. Sometimes there are multiple basis for a district court's judgment, and litigants decide only to bring one or two to you. And those are the ones that should be addressed on appeal. I do think this circumstance, because it's a Seventh Amendment issue, we did raise it on a motion for reconsideration that was filed not even 10 days after the judge decided to do a partial retrial. It was explicitly raised then – that was about five months before the retrial. When he denied that, we sought mandamus to raise the issue with you before the issue was decided. And I think because it's a Seventh Amendment issue, the Supreme Court case in Aetna 301 U.S. 393 says, look, if it's a constitutional waiver, it really requires particular scrutiny. And to ensure that there has been a waiver and that there's been prejudice because it's a constitutional right. And we would suggest that there isn't here. The second point I would make is this, and this may be, Judge O'Malley, when you and I were discussing why I was making the argument that other issues should come in. The gaffing product says that the issues have to be so distinct and separable that it's clear they should not be tried together. And that's a presumption that I was operating on. So by way of example on the issues that I finished my argument on, the infringement issue, when the court looks at the record on the question of whether the controllers here have a separate instance of a protocol every time a mobile unit connects, there is nothing. And if the court considers footnote 10 of Comey's brief, you'll see that it really is just saying, well, it's out there. It's sort of out there, and the jury was entitled to say there was one. Those issues are sufficiently intertwined that they should be tried together. How do you deal with the fact that we regularly remand only portions of cases for retrial? Your Honor, I think, for sure, you regularly remand cases for infringement and no retrial of validity. But I think, at least as far as I know, the precise question of when you're remanding on induced infringement where a good faith basis of non-infringement, a good faith basis of invalidity, the issues of direct infringement are so intertwined with that broader issue. I don't know of any Federal Circuit case that says you can parse them out. And the last point I would make is this. On this issue of the good faith basis of validity, I think a simple example, at least to me, helps. If I'm making cars, and I'm selling them to customers, and I've been doing it for 10 years, and someone somehow, because a mistake is made, gets a patent from the patent office that says a method of driving cars, that's what the claim is, a method of driving cars, and then sues my customers and me for inducing infringement, there's no doubt that I fall within the scope of that claim. There's also no doubt that it's invalid. If you could not move forward as a practical matter in the real world and sell my cars that I've been selling for 10 years, based upon my good faith basis, the patent is way overbroad, invalid, we'd have a real problem. And that's why both issues need to be in play. Thank you. Any questions? Thank you. Thank you, Mr. Lee. Thank you, Mr. Wiggins. The case is taken under submission.